DECISION AND JUDGMENT
{¶ 1} Appellant, Andrea Hensley, nka Andrea Vassallo, appeals the judgment of the Erie County Court of Common Pleas, Domestic Relations Division, finding her in contempt for failing to abide by the court's visitation order. Appellant assigns the following error for review:
 {¶ 2} "A trial court abuses its discretion when it adopts a magistrate's decision that does not take into consideration a defense to contempt action." *Page 2 
 {¶ 3} Andrea and the defendant below, John Hensley, divorced in late 2001. In the divorce proceedings, Andrea was awarded custody of the parties' son, and John was awarded visitation and companionship. The last visitation order in effect at the time of this action gave John visitation with the child every other weekend, every other Wednesday evening, and extended summer visitation of four consecutive weeks. The order also notified the parties that a failure to comply with the order may result in contempt.
 {¶ 4} On June 6, 2006, John filed a motion for a change of custody, and a motion for contempt. He alleged that Andrea had denied him extended summer visitations in the past and had notified him of her intent to deny his extended visitation for the upcoming summer. In July, Andrea was granted a continuance to secure counsel. She was notified that the visitation order continued in force.
 {¶ 5} On January 8, 2007, a hearing on the motion was held before a magistrate. Before the commencement of the hearing, John, acting pro se, withdrew his motion for custody. The hearing proceeded on the contempt motion alone. The magistrate found Andrea in contempt for willfully failing to honor the visitation order. The magistrate's decision noted that Andrea had raised "issues regarding the care" John provided during visitation. However, the decision also noted that Andrea had taken no steps to request to modify the visitation, stating "[Andrea's] concerns may be well founded but the court cannot act on those concerns if [Andrea] does not seek such relief." *Page 3 
 {¶ 6} The trial court, in affirming the magistrate's decision, noted that Andrea had not filed a transcript of the magistrate's hearing. The hearing transcript is part of the record on appeal.
 {¶ 7} Civ. R. 53(D)(3)(b)(iii) states:
 {¶ 8} "An objection to a factual finding, whether or not specifically designated as a finding of fact under Civ. R. 53(D)(3)(a)(ii), shall be supported by a transcript of all the evidence submitted to the magistrate relevant to that finding or an affidavit of that evidence if a transcript is not available. With leave of court, alternative technology or manner of reviewing the relevant evidence may be considered. The objecting party shall file the transcript or affidavit with the court within thirty days after filing objections unless the court extends the time in writing for preparation of the transcript or other good cause. If a party files timely objections prior to the date on which a transcript is prepared, the party may seek leave of court to supplement the objections."
 {¶ 9} In accordance with Civ. R. 53, Andrea cannot challenge the magistrate's findings of fact on appeal because she did not submit a transcript or affidavit to the trial court. State ex rel. Duncan v.Chippewa Twp. Trustees (1995), 73 Ohio St.3d 728, 730; Moore v.Moore, 6th Dist. No. OT-06-026, 2008-Ohio-256, ¶ 13. Thus, "to the extent that appellant challenges any findings of fact, appellant is precluded from arguing any factual determinations on appeal, and has waived any claim that the trial court erred in adopting the magistrate's findings." Moore, 2008-Ohio-256, ¶ 13. Therefore, we may review Andrea's assigned error only with respect to her argument that the trial court *Page 4 
abused its discretion in adopting the magistrate's legal conclusion that she could not raise a defense in the contempt action. Civ. R. 53 precludes us from reviewing her arguments pertaining to the facts of her defense.
 {¶ 10} The trial court found the following findings by the magistrate most relevant:
 {¶ 11} "1. [John] had no visitation with his son * * * from April 2006, until August 10, 2006.
 {¶ 12} "2. [John's] testimony was generally credible.
 {¶ 13} "3. [John] is very frustrated that he is not getting visitation with [his son].
 {¶ 14} "4. [Andrea] denied [John] visitation with [the child] on the weekend of April 14, 2006.
 {¶ 15} "5. [Andrea] denied [John] visitation with [the child] on the next scheduled visitation weekend following April 14, 2006."
 {¶ 16} In her filed objections, Andrea did not specifically raise, as an objection to the conclusions of law, that her reasonable, good faith belief that the child would not be safe with John should be considered as a defense. The objections noted the facts of the child's injuries, but only as a recitation of the facts. Also, in her objections, she admitted that she denied visitation three times between the time of injury and the filing of the motion. She also admitted that visitation did not resume until August.
 {¶ 17} The trial court found that the magistrate did not abuse her discretion in rendering her decision, and also approved the magistrate's proposed penalty of ten days *Page 5 
incarceration. The penalty is below the maximum penalty of 30 days incarceration for a first offense. R.C. 2705.05(A)(1). The trial court also approved the magistrate's proposed purge conditions, that Andrea pay court costs, make the child available for all court ordered visitations with John, and use a court-approved intermediary for transferring the child during visitation periods.
 {¶ 18} We begin our review of Andrea's assigned error by noting that she incorrectly labels these proceedings as "criminal" contempt proceedings. While criminal and civil contempt proceedings differ, they only differ insofar as the purpose to be served by the sanction is different. The instant proceedings are governed by R.C. 2705.031, and are civil in nature.
 {¶ 19} "Civil contempt sanctions are designed for remedial or coercive purposes and are often employed to compel obedience to a court order. Criminal contempt sanctions, however, are punitive in nature and are designed to vindicate the authority of the court. Thus, civil contempts are characterized as violations against the party for whose benefit the order was made, whereas criminal contempts are most often described as offenses against the dignity or process of the court." State ex rel.Corn v. Russo (2001), 90 Ohio St.3d 551, 554-555 (citations omitted). "Civil contempt is intended to be remedial or coercive in nature, and any sanction imposed by the court for civil contempt must provide the contemptor with the opportunity to purge." Hout v. Hout, 5th Dist. No. 2007-CA-111, 2008-Ohio-2684, ¶ 8, citing Brown v. Executive 200,Inc. (1980), 64 Ohio St.2d 250. *Page 6 
 {¶ 20} An appellate court will not reverse the decision of a lower court in a contempt proceeding absent a showing of an abuse of discretion. State ex rel. Ventrone v. Birkel (1981), 64 Ohio St.2d 10,11, citing Cady v. Cleveland Worsted Mills Co. (1933), 126 Ohio St. 171. "The term `abuse of discretion' connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable." Blakemore v. Blakemore (1983),5 Ohio St.3d 217, 219.
 {¶ 21} Andrea argues that the trial court abused its discretion when it refused to consider her defense — namely, that she was afraid to allow John visitation with the child because of the April 2006 accident. We find this argument to be without merit.
 {¶ 22} Several appellate districts have held that, in contempt proceedings pursuant to R.C. 2705.031, a custodial parent has a defense if she has a reasonable, good faith belief that she must deny visitation to protect the safety of the child. McClead v. McClead, 4th Dist. No. 06CA67, 2007-Ohio-4624 (custodial parent not in contempt for refusing visitation on good faith belief child was being sexually abused);Buchanan v. Buchanan (Aug. 16, 1999), 12th Dist. Nos. CA98-10-085, CA98-10-091 (custodial parent not in contempt where he "acted reasonably and in good faith under the circumstances" in withholding visitation; child was bruised and told custodial parent that "Mommy hit me in the teeth."); Clark v. Clark (Apr. 19, 1993), 12th Dist. No. 92-01-001 (custodial parent not in contempt where she had a "sincere belief that non-custodial parent was sexually abusing child); Boley v. Boley (Sept. 19, 1994), 5th Dist. No. CA-498 (custodial parent not in contempt for stopping visitation where he had a "good faith belief *Page 7 
that it was necessary to protect the safety of the children"; Dept. of Children's Services was investigating non-custodial parent's physical abuse of children).
 {¶ 23} However, those districts which have adopted the good faith justification defense have consistently upheld, on appeal, the trial court's finding that parent's asserted justification for violating the visitation order was inadequate. Karales v. Karales (Aug. 21, 2001), 10th Dist. No. 00AP-1428 (custodial parent did not have good faith belief that harm would occur when court had previously rejected her emergency request to terminate all visitation and had benefit of knowing how the court would rule); Hout v. Hout, 5th Dist. No. 2007-CA-111,2008-Ohio-2684 (custodial parent properly found in contempt where she had no good-faith belief she was protecting the child by denying visitation); Shook v. Shook (Sept. 23, 1998), 9th Dist. No. 97CA0074 (parent in contempt where he had no reasonable belief that child was an "any perceived immediate, serious physical harm"); Kurincic v.Kurincic (Feb. 24, 2000), 8th Dist. No. 75592 (trial courts may find custodial parent had "good faith belief that he was acting in best interests of the child, and was justified in not following court's order"; but no justification existed where custodial parent entered into shared parenting agreement after alleged sexual abuse occurred.)
 {¶ 24} Andrea does not, in her brief, cite these cases. Rather, she focuses on the magistrate's note that Andrea took no steps to seek relief from the visitation order by filing a motion to modify in the months after the accident or after the filing of the contempt motion. She argues that if custodial parents are required to comply with *Page 8 
visitation orders if the child faces imminent harm from the non-custodial parent, then she "and others in her situation would be duty bound to hand over a child if the father was drunk or high on drugs. * * * Based on the court's logic, if the father was due to get the child on a Saturday and he showed up drunk, Mom would have to give the child to the father and then race to the Court house on Monday hoping to get an audience. There is absolutely no prerequisite to protect a child."
 {¶ 25} This is a slippery slope argument. Naturally, a custodial parent would be justified in refusing to allow a child to accompany someone who is drunk or "high" as those circumstances may result in imminent harm to the child. But the subsequent steps a parent takes to protect the child may be indicative of whether the belief that the child faces harm is reasonable.
 {¶ 26} This district has not explicitly formulated a defense in contempt actions based on a parent's reasonable, good faith belief that a child faces imminent harm or has a reasonable, good faith belief that withholding visitation is necessary to protect the safety of the child. Such a rule makes sense. This defense may, therefore, be considered by trial courts in determining whether the parent was in willful violation of a court order. However, the trial court has discretion to consider all surrounding circumstances and weigh all factors in deciding whether a parent is in contempt.
 {¶ 27} The purpose of civil contempt actions is, partially, to coerce compliance. However, the punishment for civil contempt is meted out when willful disobedience to a court order is meant to "disrespect" the court or to "embarrass, impede or obstruct" the *Page 9 
court's functions. Shafer v. Shafer, (Dec. 1, 1993), 4th Dist. No. 93-CA-16. "There is nothing that people bear more impatiently than contempt; and an injury is much sooner forgotten than an insult." Earl Philip Dormer Stanhope Chesterfield, "Letters to His Son: On the Fine Art of Becoming a Man of the World and a Gentleman" (M.W. Dunne, 1901).
 {¶ 28} Courts, however, have considered and may consider the custodial parent's subsequent attempts to access remedies when weighing whether the parent has a reasonable, good faith belief that imminent harm faces the child during visitation. For example, in Bardenhagen v.Bardenhagen (Aug. 27, 1990), 12th Dist. No. CA90-01-009, the court found it noteworthy that the custodial parent was "dilatory" by unilaterally terminating visitation and then waiting two months before filing a motion to modify visitation on her suspicions that the non-custodial parent was sexually abusing the child.
 {¶ 29} Hout v. Hout, 5th Dist. No. 2007-CA-111, 2007-Ohio-2684, strongly resembles the facts of this case. In Hout, the custodial parent was held in contempt, even though the non-custodial parent unreasonably failed to seek medical treatment for an injured child and failed to notify the custodial parent of the injury. The trial court found that the custodial parent's denial of visitation time was not reasonably justified. Although the non-custodial father had made an "incorrect judgment call," the father did so because he knew the custodial mother would be "upset" when she discovered the injury. Thus, the court found that the mother had "unwittingly contributed to [the father's] failure to notify her of the injury * * *." Id. at ¶ 14. *Page 10 
 {¶ 30} Contrary to Andrea's argument, a court's consideration of attempts to access judicial remedies does not mean a parent isrequired to access judicial remedies before denying visitation. Rather, the custodial parent's subsequent actions taken to protect the child from the perceived threat are to be weighed in determining whether the belief is reasonable and whether the parent violated the order in a good faith attempt to protect the child.
 {¶ 31} Our review is limited to the magistrate's conclusions of law and the trial court's adoption of those conclusions. We find that the magistrate and the trial court did consider Andrea's defense to the allegation of contempt. While the court may not have given her defense the weight she thought it deserved, the court acted within its discretion to weigh all the facts and circumstances. Because Andrea failed to file a hearing transcript with the trial court, Civ. R. 53 precludes us from reviewing the facts and circumstances. Appellant's assignment of error is, therefore, not well-taken.
 {¶ 32} For the foregoing reasons, the judgment of the Erie County Court of Common Pleas, Domestic Relations Division, is affirmed. Appellant is ordered to pay the costs of this appeal pursuant to App. R. 24. Judgment for the clerk's expense incurred in preparation of the record, fees allowed by law, and the fee for filing the appeal is awarded to Erie County.
JUDGMENT AFFIRMED. *Page 11 
A certified copy of this entry shall constitute the mandate pursuant to App. R. 27. See, also, 6th Dist. Loc. App. R. 4.
Peter M. Handwork, J., Arlene Singer, J., and William J. Skow, P.J., concur. *Page 1