[Cite as *In re S.E.*, 2013-Ohio-5057.]

# IN THE COURT OF APPEALS OF OHIO
## SECOND APPELLATE DISTRICT
### MONTGOMERY   COUNTY

IN RE:

S.E.

:
:
:
:
:
:
:
:
:
:

Appellate Case No. 25743

Trial Court Case No. 2011-9024

(Juvenile Appeal from
 Common Pleas Court)

· · · · · · · · · · ·

O P I N I O N

Rendered on the 15th day of November, 2013.

· · · · · · · · · ·

J. ANDREW ROOT, Atty. Reg. #0059287, 133 East Market Street, Xenia, Ohio 45385
     Attorney Appellant, N.R.

MIA WORTHAM SPELLS, Atty. Reg. #0039449, 5 North Williams Street, Wright-Dunbar
Village, Dayton, Ohio 45402-6843
     Attorney for Appellee, N.E.

· · · · · · · · · · · ·

HALL, J.,

{¶ 1}    N.R. ("Father") appeals from the trial court's judgment entry that, among other things, overrules objections to a magistrate's decision and imputes income to him for child-support purposes.

{¶ 2}    In his sole assignment of error, Father contends the trial court abused its discretion by finding him voluntarily underemployed and imputing income of $25 per hour or $52,000 per year. For her part, appellee N.E. ("Mother") has not filed an appellate brief.

{¶ 3}    The record reflects that Father filed a complaint to establish paternity of the parties' infant child. The matter proceeded to a hearing before a magistrate in which Father and Mother participated. After establishing Father's paternity, awarding Mother legal custody, and granting Father parenting time, the magistrate turned to child support. On that issue, Father testified that he had obtained a bachelor's degree in computer engineering in 2006. (Hearing Transcript at 22). From 2006 to 2009, Father did not work anywhere. (*Id*. at 27). Instead, he received assistance from family members. (*Id*. at 27-28).  From 2009 up to the February 2012 hearing, Father was self-employed designing websites. (*Id*. at 20, 27). In the preceding two years, Father had gross income of approximately $6,500 and $8,500 working for himself. (*Id*. at 21, 24). He testified that he had not been employed since his early college days. (*Id*. at 22). That prior experience included working at movie theaters. (*Id*.).

{¶ 4}    Father testified that he was seeking employment in the computer-engineering field. (*Id*. at 23). He stated that he had applied "[a] couple places." (*Id*.). When asked the "going rate" if he obtained employment as a computer engineer, Father responded: "I'm not for sure. It can be from $15 to almost $50 an hour." (*Id*. at 26). When asked the salary of the jobs for which he had applied, Father stated that he did not know. Once again, however, he added that "it goes from 15 to 50 based on experience." (*Id*.). Father opined that the Dayton market was small. (*Id*. at 27). He added that he had started looking beyond Dayton to increase the potential opportunities. (*Id*.).

{¶ 5}    Based on Father's testimony, the magistrate found him voluntarily

underemployed and imputed full-time income at a rate of $25 per hour for an annual income of $52,000. (*Id*. at 28). The magistrate memorialized this finding and others in a written decision to which Father filed objections. (Doc. #6, 10). The trial court overruled the objections and adopted the magistrate's decision in an April 3, 2013 decision and judgment. (Doc. #4). With regard to the imputation of income, the trial court reasoned:

Pursuant to O.R.C. §3119.01(11), "potential income" may be imputed to a parent if the Court determines the parent is voluntarily unemployed or voluntarily underemployed. The Court may calculate the potential income a parent would have earned if fully employed as determined from the following criteria: (i) The parent's prior employment experience; (ii) The parent's education; (iii) The parent's physical and mental disabilities, if any; (iv) The availability of employment in the geographic area in which the parent resides; (v) The prevailing wage and salary levels in the geographic area in which the parent resides; (vi) The parent's special skills and training; (vii) Whether there is evidence that the parent has the ability to earn the imputed income; (viii) The age and special needs of the child for whom child support is being calculated under this section; (ix) The parent's increased earning capacity because of experience; (x) The parent's decreased earning capacity because of a felony conviction; (xi) Any other relevant factor.

The Court finds that [Father] has been self-employed as a website developer for the past three (3) years and has also worked part-time at a movie theater. (Tr. at p. 20, 22). The Court further finds that [Father] presented no

evidence indicating that he is incapable or otherwise unable to obtain full-time employment. Therefore, the Court finds [Father] is voluntarily underemployed.

This Court finds that [Father] testified he has a bachelor's degree in computer engineering. (Tr. at p. 22). This Court further finds that according to [Father], the prevailing wage for a computer engineer is between $15.00 and $50.00 per hour. (Tr. at p. 26). The Court finds [Father] further testified that he has submitted several applications but had yet to find full-time employment. (Tr. At p. 23). Based on the foregoing, the Court finds the imputation of $25.00 per hour is appropriate pursuant to O.R.C. §3119.01(11). Accordingly, [Father's] objections are OVERRULED. The Court notes that [Father] may file a motion to modify child support pursuant to O.R.C. §3119.79 if he can provide evidence to support said modification.

(Doc. #4 at 2-3).

{¶ 6} On appeal, Father challenges the trial court's finding that he is voluntarily underemployed and its imputation of $25 per hour in income. With regard to the voluntary underemployment issue, Father notes that he never has worked for an employer as a computer engineer. He stresses his professed inability to find a job in his field. He also characterizes his testimony about the pay range for computer engineers as a "guess." Father insists that, through self-employment, he "was working and doing the best that he could[.]"

{¶ 7} Even if the trial court correctly found him voluntarily underemployed, Father challenges its decision to impute income at a rate of $25 per hour. While acknowledging that the trial court considered several of the factors identified in R.C. §3119.01(11), Father complains that

"[t]he court did not consider such important factors as (iii) the parent's physical and mental disabilities, (vi) the parent's special skills and training, (vii) whether there is evidence that the parent has the ability to earn the imputed income or (xi) other relevant factors." With regard to the factors the trial court did consider, Father contends imputing annual income of $52,000 per year was an abuse of discretion because he never has made that salary, his testimony about the prevailing wage for computer engineers was a "guess," and the local job market is poor.

{¶ 8}    This court reviews a trial court's finding of voluntary underemployment and its imputation of income for an abuse of discretion. *Rock v. Cabral*, 67 Ohio St.3d 108, 112, 616 N.E.2d 218 (1993). "An abuse of discretion means that the trial court's attitude was unreasonable, arbitrary, or unconscionable." *Steele v. Steele*, 2d Dist. Montgomery No. 25713, 2013-Ohio-3655, ¶23.

{¶ 9}    We see no abuse of discretion in finding Father voluntarily underemployed. After obtaining a bachelor's degree in computer engineering in 2006, Father somewhat oddly did not work at all, anywhere, for the next three years. Thereafter, he spent three years performing some work as a self-employed website designer. That work could not have been more than part time given Father's gross income of $6,500 and $8,500 over the preceding two years. Although Father testified that he had sought work, the trial court reasonably could have concluded that he did not look very hard. Indeed, the record reflects that Father had applied "[a] couple places." Under these circumstances, we cannot say a finding of voluntary underemployment is an abuse of discretion.

{¶ 10}    A much closer question is whether the trial court abused its discretion in imputing annual income of $52,000 to Father due to his voluntary underemployment. On appeal,

Father claims the trial court neglected to consider certain factors under R.C. 3119.01(11) that might pertain to him, including physical and mental disabilities, special skills and training, his ability to earn the imputed income, and other relevant factors. This argument lacks merit. The record contains no evidence that Father has any physical or mental disabilities. Nor does the record show that he possesses any special skills or training beyond his computer-engineering degree and website-design experience, both of which the trial court considered. Although Father disagrees with the trial court's reasoning and conclusion, it also considered his ability to earn the imputed income. Finally, with regard to the catch-all "other relevant factors," Father cites none.

{¶ 11}  As for the statutory factors upon which the trial court relied, Father contends it abused its discretion. He first notes that he never has earned $52,000 per year. But that fact is not dispositive. The question is whether the trial court abused its discretion in finding Father *capable* of earning $52,000, not whether he has earned it in the past. *Rock* at 112 (finding no abuse of discretion in imputing a salary that "represent[ed] nearly twice as much money as appellant ha[d] ever earned on an annual basis in any profession").

{¶ 12}  Father next claims his testimony about the prevailing wage for a computer engineer was a "guess" and that the trial court abused its discretion in relying on it. We disagree. When asked the "going rate of pay" if he secured employment as a computer engineer, Father responded: "I'm not for sure. It can be from $15 to almost $50 an hour."  When then asked the salary of the jobs for which he had applied, Father responded that he did not know specifically. He explained, however, that "it goes from 15 to 50 based on experience." We believe this testimony was definite enough for the trial court to rely on it as the prevailing-wage scale for a computer engineer.

{¶ 13}   Finally, Father cites the "poor" local job market as grounds for finding an abuse of discretion in the trial court's income-imputation decision. Although Father claimed below that he could not find work in his field, he only mentioned submitting "[a] couple" applications. In light of that testimony, and considering Father's sparse work history over the entire six years following his college graduation, the trial court could have given little weight to his claim about a poor job market precluding employment in his field.

{¶ 14}   Despite our rejection of the foregoing arguments, we nevertheless find an abuse of discretion in the trial court's imputation of income at a rate of $25 per hour.   That decision was unreasonable because it is unsupported by any evidence. While the record supports a finding that the general salary range for a computer engineer is $15 to $50 per hour depending on experience, the trial court did not cite any evidence to support its selection of $25 per hour as the appropriate figure here. Other than part-time self employment, Father has no relevant work experience. He never has held a computer-engineering job. Therefore, we see no evidentiary basis to justify imputing income beyond the bottom of the range he mentioned. As the proponent of imputing income, Mother bore the burden of proof on the issue. *O'Grady v. O'Grady*, 2d Dist. Greene Nos. 01CA36, 01CA37, 01CA52, 2002 WL 63309, *5 (Jan. 18, 2002) ("The party who is a proponent of the imputed income finding bears the burden of its proof.").

{¶ 15}   Based on the foregoing reasoning, we overrule Father's assignment of error insofar as he challenges the trial court's finding that he is voluntarily underemployed. We sustain Father's assignment of error, however, insofar as he contends the trial court abused its discretion in imputing income of $25 per hour. The cause is remanded for the trial court to calculate Father's child-support obligation using an imputed-income figure of $15 per hour.

{¶ 16}   Judgment affirmed in part, reversed in part, and cause remanded.

. . . . . . . . . . . . .

FROELICH and WELBAUM, JJ., concur.

Copies mailed to:

J. Andrew Root
Mia Wortham Spells
Hon. Anthony Capizzi